IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

PARTEX APPAREL INTERNATIONAL )
LTDA S.A. de C.V., an El Salvador        )
Corporation,                                         )
                                                         )
                        Plaintiff,                  )
                                                         )
            v.                                           )            Case No. 10-2678
                                                         )
GFSI, INC., a Delaware Corporation,     )
                                                         )
                                                         )
                        Defendant,                )
                                                         )
            v.                                           )
                                                         )
BANCO CENTROAMERICO              )
INTEGRACION ECONOMICA,            )
                                                         )
                                                         )
                        Intervenor.              )
_____)

## MEMORANDUM AND ORDER

        This is a breach of contract case.  Plaintiff Partex's Complaint (Doc. 1) consists of one count

of breach of contract based upon defendant GFSI's failure to pay Partex for various orders it placed

with Partex for sports apparel.  Partex manufactured the apparel ordered by GFSI and shipped the

apparel to GFSI.  GFSI admits that it owes $1,013,829.87 for the goods Partex provided to GFSI.

However, GFSI has refused to pay the money because it claims that one or more other entities have

demanded that GFSI pay them rather than Partex.  GFSI contends that it is unable to make payment

without incurring possible liability under the law of El Salvador until it receives assurances from all

entities that it is making payment to the proper party.

        This action was originally filed in July of 2010, was transferred to this court from the

Southern District of Florida in December of that year, and was recently reassigned to the

undersigned.  There are a number of motions pending before the court.  The court is now prepared to rule on certain of these motions, including plaintiff's long-pending Motion for Summary Judgment (Doc. 13).  Before it does so, the court briefly addresses Partex's Motion to Strike (Doc. 22) and GFSI's Motion to Stay (Doc. 41).

## I.       Motion to Strike (Doc. 22)

Partex has filed a Motion to Strike (Doc. 22) the affidavits of Bill Ramsey and Robert J. Bjerg, which were attached to GFSI's response to Partex's Motion for Summary Judgment.  Partex argues that the affidavits contain inadmissible hearsay.  Partex specifically points to paragraph 6 of Mr. Ramsey's affidavit and paragraphs 8 and 9 of Mr. Bjerg's affidavit.

GFSI asserts that the cited paragraphs do not constitute inadmissible hearsay under Fed. R. Evid. 801(c) because the statements are not offered to prove the truth of the matter asserted.  GFSI argues that the purpose of the statements in the affidavits is not to prove that Banco Centrroamerico Integracion Economica ("BCIE") and/or Sartee—rather than Partex—is owed the money.  Instead, GFSI claims that the purpose is to demonstrate that the other parties have made such claims, and consequently, GFSI has not paid.

The first of the paragraphs in question is paragraph 6 of Mr. Ramsey's Affidavit, which states: "GFSI discovered that Partex had closed its existing manufacturing facility in El Salvador and that one or more receivers, BCIE and Sartee, had taken over Partex's accounts and operations.  BCIE and Sartee also demanded that GFSI make payment directly to them rather than to Partex."  (Doc. 19-1 at 2.)

Paragraphs 8 and 9 of Mr. Bjerg's Affidavit state that

"[u]pon further investigation, GFSI was informed that Partex had essentially gone out of business and that two other parties located in El Salvador, BCIE and Sartee, were

owed significant amounts of money by Partex.  BCIE and Sartee asserted claims to the monies that were due from GFSI to Partex.  GFSI has been advised that, under El Salvadoran law, it might be held liable to the other claimants if it remitted payment to Partex."

(Doc. 19-3 at 2.)

Subject to a number of exceptions, hearsay is a statement that (1) the declarant does not make while testifying; and (2) a party offers in evidence to prove the truth of the matter asserted, and is inadmissible.  Fed. R. Evid. 801.  However, statements that are offered for another purpose—a purpose other than to prove the truth of the matter asserted—do not qualify as hearsay at all.  One example of an acceptable purpose would be if a statement is presented to show the effect on the listener.  *See United States v. Cline*, 570 F.2d 731, 734 (8th Cir. 1978) (holding statements are non-hearsay when used to show the listener's state of mind); *United States v. Glasser*, 443 F.2d 994, 1000 (2d Cir. 1971), *cert. denied*, 404 U.S. 854 (1971) (holding statement was not hearsay when used merely to show that the comment was made); *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) (citing *United States v. Robinzine,* 80 F.3d 246, 252 (7th Cir. 1996) (holding statement offered to show its effect on the person who heard the statement is not hearsay)).

The key to evaluating whether the challenged paragraphs in GFSI's affidavits constitute hearsay is to determine the purpose for which they are offered.  Here, the statements are offered to show the effect on the listener—not to prove the truth of the matter asserted.  With regard to paragraph 6 of Mr. Ramsey's affidavit, the purpose is to show that when GFSI heard that Partex had closed a manufacturing facility in El Salvador and that receivers had taken over Partex's accounts, GFSI became uncertain about whether Partex or some other entity was entitled to payment.  The effect of the statement on GFSI is explained in the following paragraph of the affidavit: "GFSI became concerned that if it paid the wrong party, it could be held responsible for paying the same

invoices twice . . . ." (Doc. 19-1 at 2.)

The same is true with the challenged statements in Robert Bjerg's affidavit.  The assertion that GFSI was informed that Partex had essentially gone out of business and that Partex owed two other parties a significant amount of money is not offered to prove the truth of the matter asserted.  Instead, these statements are introduced to show the effect the statements had on the person who heard them.  That effect is stated in paragraph 10 of that same affidavit.  "Not knowing which party should receive payment . . . GFSI sent letters . . . requesting [] a joint instruction as to which party(ies) should receive payment."  (Doc. 19-3 at 2.)

Both affidavits stated that BCIE and Sartee had either demanded that GFSI make payment directly to them instead of Partex or asserted a claim to the money owed to Partex.  In either case, such demands/assertions do not qualify as hearsay because they are offered to show the effect on the listener, which was that GFSI developed an uncertainty as to who to pay.  They are not offered to prove that the statements are true, *i.e.*, that the other entities are actually entitled to the payment.

Therefore, Partex's Motion to Strike (Doc. 22) is denied.

## II.    Motion to Stay (Doc. 41)

On March 10, 2011, Defendant GFSI filed a motion to Stay Ruling (Doc. 41) on Plaintiff's Motion for Summary Judgment pending discovery.  Essentially, GFSI sought to conduct discovery as to who is entitled to payment given the potential application of the alleged receiverships in El Salvador.  Partex opposed the motion.  Under the Scheduling Order currently in effect (Doc. 80), the deadline to complete discovery closed on December 2, 2011.[1]  GFSI therefore received the benefit of its requested stay, and the court finds that the motion should be denied as moot.

---

[1]   Intervenor/crossclaim defendant BCIE filed a motion to extend the time necessary to complete discovery, which is also still pending.  The court finds that motion is irrelevant to a ruling on GFSI's March 2011 motion to stay.

### III.    Partex's Motion for Summary Judgment (Doc. 13)

Plaintiff's long-pending Motion for Summary Judgment (Doc. 13) asserts that GFSI has admitted its contract with Partex, admitted that Partex performed under the contract, and conceded that it owes Partex $1,013,829.87 for the goods provided.

In response (Doc. 19), GFSI argues that the question at issue is not whether GFSI owes $1,013,829.87, but instead the question is to whom payment should be made.  GFSI asserts that given the uncertainty regarding the two "receivers" claiming an interest to the monies under Salvadoran law (BCIE and Sartee), GFSI has withheld payment to avoid paying the wrong party.  GFSI further argues that it did not breach the contract because Partex failed to provide adequate assurances under the Uniform Commercial Code ("U.C.C.").  GFSI's response states that it has fully reserved the stated amount for payment and will "promptly pay the full amount" once it has confidence that it is paying the correct party and that it will not be required to pay twice.  (Doc. 19 at 3.)

#### A.    Jurisdiction

This court has subject matter jurisdiction over Partex's contract claim against GFSI based on diversity and the amount in controversy.  28 U.S.C. § 1332.  Venue is appropriate in this district based upon the parties' contract, which agrees venue is proper in the state and federal courts of the State of Kansas, which shall have exclusive jurisdiction over this matter.  (Doc. 13-1.)  That agreement also states that Kansas law will govern construction and interpretation of the contract.  No party challenges the forum-selection or choice-of-law provisions, and in such circumstances the court generally will give effect to the agreement of the parties.  *See Thomas v. Johnson Agri-Trucking*, 802 F. Supp. 2d 1242, 1250 (D. Kan. 2011) (citations omitted).

#### B.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (internal citations and quotations omitted). The nonmoving party cannot defeat a properly supported motion for summary judgment by relying on conclusory allegations; rather, the opposing party must come forward with significant admissible probative evidence supporting that party's allegations. *Anderson*, 477 U.S. at 256.

**C.      Facts**[2]

The facts in this case are uncontroverted.  Partex, an El Salvador corporation, is a sports apparel manufacturer with a physical presence in South Florida.  GFSI, a Delaware corporation with its principal place of business in the State of Kansas, is a designer, manufacturer, and marketer of sportswear.

Partex and GFSI have a long-standing relationship whereby Partex manufactures and sells sports apparel to GFSI, and GFSI markets and distributes the apparel.  Partex sells apparel to GFSI F.O.B. Miami, and GFSI takes title to the goods in Miami and stores the goods in Miami until it ships the goods to the location(s) of its choosing.

Between May 14, 2010, and June 30, 2010, Partex sent invoices to GFSI for orders GFSI placed for $1,094,655.75 worth of sports apparel from Partex between February 5, 2010, and May 17, 2010.  Partex manufactured the apparel and shipped the apparel F.O.B. Miami, as per the parties' long-standing agreement.  Payment for each order placed by GFSI was due and payable to Partex within 30 days of the date of the invoice.

The parties agree that GFSI currently owes $1,013,829.87.  Partex has demanded, on numerous occasions, that GFSI pay for the goods by wire-transferring the monies owed to Partex's bank account in Miami, Florida.  Despite numerous demands by Partex, GFSI has not paid.

**D.      Analysis**

The court first addresses GFSI's demand for assurances.  GFSI argues that Partex is not entitled to summary judgment as a matter of law because GFSI is not in breach of contract.  To

---

[2]  The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56.  The court has reviewed the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

support this argument, GFSI asserts that Partex has failed to provide GFSI with reasonable adequate assurances under § 2-609 of the U.C.C.

Since this transaction involves the sale of goods, it is covered by Article 2 of the U.C.C., which has been adopted by the State of Kansas in Chapter 84 of the Kansas Statutes Annotated. Under Kan. Stat. Ann. § 84-2-609, a party that has reasonable grounds for insecurity as to the other party's performance under the contract is entitled to request adequate assurances of due performance. Unless and until such adequate assurances are provided, the requesting party may suspend further performance under the contract.  Kan. Stat. Ann. § 84-2-609.

Here, GFSI claims that, through its Salvadoran legal counsel, it requested that Partex provide adequate assurances as to which party should receive payment on the invoices.[3]  GFSI further asserts that since Partex failed to respond to its request for adequate assurances, GFSI "was entitled to suspend further performance and it is not in breach of contract."  (Doc. 19 at 3.)

 Kan. Stat. Ann. § 84-2-609(1) provides:

> A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired.  When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

According to the undisputed facts, Partex performed under the contract.  It follows that since Partex has performed under the contract (the parties agree that GFSI currently owes $1,013,829.87 for sports apparel ordered from Partex, which Partex manufactured and shipped per the parties' agreement), GFSI has not established "reasonable grounds for insecurity . . . with respect to the performance" of Partex.

---

[3]  GFSI also asserts that it requested assurances from Sartee and BCIE, but received no responses.

-8-

It is clear to this court that, on the undisputed facts, Partex has satisfied all the elements of its breach of contract claim, and is entitled to judgment in its favor.

This brings the court to GFSI's second contention: that the issue in this case is not *whether* it must pay, but *who* it must pay. The court disagrees. This is a simple breach of contract action. The dispute did not arise because GFSI does not know who to pay. It arose because GFSI failed to pay Partex, as it was bound to under its agreement with Partex.

Because the undisputed facts establish that Partex is entitled to judgment in its favor, Partex's Motion for Summary Judgment (Doc. 13) is granted.

### E.    Prejudgment Interest

In its complaint, Partex asks the court to award prejudgment interest for the time GFSI held the money despite agreeing it owed the money to someone. This also was the subject of briefing on GFSI's motion to deposit funds (Doc. 84). Because the court has determined that Partex is entitled to judgment, it will address the issue.

Under Kansas law, prejudgment interest is generally allowable on liquidated claims and "may be allowable on unliquidated damages where necessary to arrive at full compensation." *Hutton Contracting Co., Inc. v. City of Coffeyville*, 487 F.3d 772, 786 (10th Cir. 2007) (citing *Miller v. Botwin*, 899 P.2d 1004, 1012 (Kan. 1995)). In either event the award "is a matter which lies within the sound discretion of the trial court." *Id.* at 1013; *see also Leeper v. Schroer, Rice, Bryan & Lykins, P.A.*, 736 P.2d 882, 887 (Kan. 1987) (holding prejudgment interest on liquidated damages is a matter of equitable discretion rather than a matter of legal right). The Tenth Circuit has held more broadly that if damages are liquidated, prejudgment interest *must* be awarded. *Royal College Shop v. N. Ins. Co.*, 895 F.2d 670, 673–74 (10th Cir. 1990).

"A claim becomes liquidated when both the amount due and the date on which it is due are

fixed and certain, or when the same becomes definitely ascertainable by mathematical computation." *Hutton Contracting Co., Inc.*, 487 F.3d at 786 (*citing Miller*, 899 P.2d at 1012) (citations and internal quotation marks omitted).  The parties agree that the amount owed is $1,013,829.87, and under the agreement of the parties and their past dealings, the date the amount was due has passed.  As stated in the uncontroverted facts, between May 14, 2010 and June 30, 2010, Partex sent various invoices to GFSI for various orders GFSI placed from Partex between February 5, 2010 and May 17, 2010.  Partex manufactured the apparel and shipped the apparel F.O.B. Miami, as per the parties' long-standing agreement.  Payment for each order placed by GFSI was due and payable to Partex within 30 days of the date of the invoice.

There is no question that the amount claimed here is liquidated—the amount due and the date it was due are both known.  Therefore, the court finds that GFSI must pay prejudgment interest for the time it held the funds despite admitting it owed the money to someone.  GFSI could have filed an interpleader action when the uncertainty first surfaced, paid the money into the courts, and been dismissed.  Instead, GFSI waited for Partex to file suit, then continued to wait well over a year before filing a motion to deposit the funds with the court.  It did so despite Partex's early motion to compel GFSI to deposit the funds in the court's registry or another registry.[4]  GFSI has presumably received a benefit from holding these funds during the entirety of this lawsuit, knowing that the funds did not belong to it.  The court finds that the equitable result is that GFSI pay prejudgment interest from the date of the filing of the case, July 26, 2010, until the date it filed its Motion to File

---

[4]   The court notes that, shortly after filing its complaint in July 2010, Partex filed a motion to compel GFSI to deposit the uncontested funds into the court's registry.  Although this is now what GFSI seeks to do, the motion was met with opposition from GFSI and was apparently terminated when the case was transferred to the District of Kansas.  It is not insignificant to the court, in evaluating the equities in this case, that GFSI waited until mid-April 2011 to seek to implead funds that it knew it owed to someone.

Counterclaim for Interpleader (Doc. 47)—April 14, 2011.  In accordance with Kan. Stat. Ann. § 16-201, in the absence of another agreed-upon interest rate, the rate will be ten percent per annum.

Having determined that Partex is entitled to judgment against GFSI and thus resolved the underlying claim, the court is left in a bit of a predicament as to how to move forward in the case.

## IV.   Reconsideration of Order (Doc. 69) Granting GFSI's Motion to Amend and to Add Party (Doc. 47); BCIE's Motion to Intervene (Doc. 55)

In April of 2011, GFSI filed a motion to amend to assert a counterclaim to implead the funds and to add BCIE as a party.  Shortly thereafter, BCIE sought to intervene in the action.  In an order dated June 21, 2011, United States Magistrate Judge Humphreys granted both motions over Partex's objection.  At this stage in the case, therefore, GFSI has a counterclaim and crossclaim for interpleader (Doc. 73); and BCIE has a pending crossclaim against defendant GFSI for the total amount GFSI owes Partex (Doc. 71).

Partex has filed a motion for reconsideration of that order (Doc. 107).  Rather than file substantive responses, GFSI and BCIE filed motions to strike Partex's reconsideration motion on the basis that it was untimely.  (Docs. 108, 111.)  The court does not condone defendants' practice.  In the interests of judicial economy, and in consideration of the changed circumstances presented by the court's ruling on the motion for summary judgment, the court will reconsider the order based on its own inherent power to review and revise interlocutory orders.  The court does so despite the absence of substantive responses to the motion to reconsider; the issue was fully briefed when it was originally before Judge Humphreys.

### A.   Standard of Review for Reconsideration

Although the court has discretion to revise interlocutory orders at any time prior to entry of

final judgment, the court routinely applies the standards established under Fed. R. Civ. P. 59(e).  *See*

*Sump v. Fingerhut, Inc.*, 208 F.R.D. 324, 327 (D. Kan. 2002); *Steele v. Ellis*, 961 F. Supp. 1458,

1467 (D. Kan. 1997) (citation omitted).  The grounds justifying an alteration, amendment, or

reconsideration are essentially the same:  (1) a change in law; (2) new evidence; and/or (3) the

necessity of correcting clear error or preventing manifest injustice.  *See* D. Kan. R. 7.3(b) (listing

factors for reconsideration); *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)

(listing Rule 59(e) factors); *Priddy v. Massanari*, 2001 WL 1155268, at *2 (D. Kan. Sept. 28, 2001)

(observing that the factors for reconsideration and Rule 59(e) are the same).  "Appropriate

circumstances for a motion to reconsider are where the court has obviously misapprehended a party's

position on the facts or the law, or the court has mistakenly decided issues outside of those the

parties presented for determination."  *Sithon Maritime Co. v. Holiday Mansion*, 177 F.R.D. 504, 505

(D. Kan. 1998) (citations omitted).  Here, new grounds for reconsideration include the court's ruling

on Partex's motion for summary judgment, and also Partex's suggestion that there has been a

material change of BCIE's position regarding its basis to intervene.  Ultimately, the court concludes

that those portions of the order granting Docs. 47 and 55 should be vacated; that BCIE should not be

permitted to intervene in this action; that GFSI is not entitled to file a counter- or crossclaim for

interpleader; and that holding otherwise would result in clear error.

> **B.    BCIE's Motion to Intervene**

BCIE is a Central American Bank which conducts business in El Salvador.  BCIE seeks to

intervene—by right or by permission—in order to make a crossclaim against GFSI on the basis that

(1) Partex defaulted on a loan from BCIE; (2) BCIE obtained an order of attachment from a

Salvadoran court; (3) and "because Partex is in receivership, [GFSI] must either remit the funds . . .

to the receiver or pay the funds into the court" for disposition.  (Doc. 71.)  In its proposed answer and

crossclaim, BCIE "submits to the jurisdiction of the United States District Court for the District of

Kansas" and admits that venue is proper here.  (Doc. 71 at 1.)  In support of its motion, BCIE offers

Document 56-1, which the court addresses at the end of its discussion.

      The court will permit intervention as a matter of right where a moving party "claims an

interest relating to the property or transaction that is the subject of the action, and is so situated that

disposing of the action may as a practical matter impair or impede the movant's ability to protect its

interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  The

court may, in its discretion, permit a party to intervene where a timely motion is filed, and the

moving party has a claim or defense that shares a common question of law or fact with the main

action.  Fed. R. Civ. P. 24(b)(1), (B).

      Neither of these requirements is satisfied here.  First, BCIE fails to demonstrate its interest in

the funds disputed in this action.  BCIE does not assert that *it*, rather than GFSI, is entitled to the

funds.  Instead its prayer for relief is that the funds be paid into this court or be paid to some

unspecified third-party receiver.  It is unclear whether BCIE is a real party in interest.  BCIE certainly

has no interest based on the contract between GFSI and Partex.  And BCIE fails to satisfactorily

show that the disposition of this contract action would create a practical impediment to its ability to

protect any interest it does have in Partex's accounts receivable.  Indeed, it admits that the issue of its

interest in Partex's assets is the subject of litigation in El Salvador.  Therefore BCIE cannot intervene

as a matter of right.

      Nor will this court permit intervention based on the record before it.  BCIE's claims and/or

defenses have nothing in common with the questions of fact and law in the main action, which

-13-

involve a claim on nonpayment for goods under a contract between Partex and GFSI.  Instead, BCIE's claims appear to arise from an unrelated loan transaction, alleged default, and contested seizure of assets in El Salvador.

The court concludes that the motion to intervene should be denied because BCIE is not the real party in interest to assert a claim against GFSI or defend against the complaint filed by Partex against GFSI; BCIE fails to claim a direct interest in the subject matter of this litigation to intervene as a matter of right; and BCIE's claim or defense and the main action do not have a question of law or fact in common to allow permissive intervention.

A number of other practical considerations support this conclusion.  Of primary concern to this court is its jurisdiction.  BCIE does not suggest that it has any contacts with Kansas, let alone the substantial contacts the court requires for general jurisdiction to lie. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).   In the absence of even minimal contacts with the forum state, the court believes it would offend due process to exercise jurisdiction over BCIE.  And although BCIE's consent can form a basis for exercising personal jurisdiction, it cannot form a basis for this court's subject matter jurisdiction.  Jurisdiction was originally proper here based on diversity between GFSI and Partex, the amount in controversy, and the forum selection clause in the contract between GFSI and Partex.  Although styled as a crossclaim against GFSI (perhaps to preserve diversity), BCIE's claim, on the face of the pleading, is actually against Partex.  This is particularly clear in light of the court's ruling on the underlying contract claim.  The court has determined that Partex is entitled to judgment in the amount of $1,013,829.87 against GFSI.  Whether BCIE has any enforceable interest in Partex's accounts receivable, including this money, is not properly before this

-14-

court in this action.  Both Partex and BCIE are foreign entities, and, based on the representations made to this court, are already involved in some litigation in El Salvador.  But no party has sought to register or enforce any foreign judgments in this action.  BCIE cannot bring a claim to enforce a foreign judgment that has not yet been obtained.  *See Padron v. Lopez*, 220 P.3d 345, 354–55 (Kan. 2009).

And the court will not entertain a claim concerning proceedings in a foreign court that is based on nothing more than unverified and unsworn representations, and an uncertified copy of a document in Spanish accompanied by what appears to be merely a caption page covered with seals and a loosely paraphrased English translation by an unknown translator.  (Doc. 56-1.)  BCIE may have a claim to this money against Partex, but not in this court and not in this action.

### C.     GFSI's Motion to Amend and Add Party (Doc. 47)

The court next turns to GFSI's motion for leave to file a counterclaim for interpleader and to add BCIE as a party, which was filed on April 14, 2011.  Partex opposed the motion as untimely, legally insufficient, and inequitable.

In her June 21, 2011 Order, Judge Humphreys noted the motion was not untimely merely because Partex's summary judgment motion was pending, and she noted that there was no trial date set.  This court agrees.  And it is unclear to this court that any deadline for filing motions to amend and to add parties had either been set or had passed.  (*See, e.g.*, Docs. 49; 80.)[5]

In granting the motion, Judge Humphreys noted Partex's arguments in opposition: that "GFSI does not have a legitimate fear of multiple liability and that BCIE's 'purported Order of Attachment'

---

[5]   The court notes, however, that the procedural history of this case is not typical, nor is it typical that motions—both dispositive and nondispositive—would remain pending as long as they have in this case.  The court may share in the blame for any confusion arising from the procedural irregularities in this case.

-15-

is not enforceable because it (1) is not a final judgment; (2) is invalid, and (3) was obtained by

fraud." Judge Humphreys then held that

> [t]he difficulty with [Partex's] arguments is that Partex asserts factual contentions that
> are beyond the scope of the pleadings. Whether BCIE's claim to the funds is superior
> to Partex's claim is an issue that will be addressed after the pleadings are amended
> and the parties are properly before the court. Under the circumstances, the motion to
> amend to assert a counterclaim for interpleader and to add BCIE as a party shall be
> GRANTED.

(Doc. 69 at 4.)

For the reasons discussed above—in the context of BCIE's motion to intervene—the court

disagrees with this rationale. Partex's factual assertions concerning any claim BCIE may have

and/or the litigation or proceedings in El Salvador are *indeed* beyond the scope of the pleadings.

That is precisely why the motion should *not* be granted. The priority of BCIE's claim to the funds

GFSI owes Partex under the contract is *not* properly before this court in the context of this simple

breach of contract action. This is particularly true when (1) the court's ruling on summary judgment

resolves the only claim properly before it; and (2) GFSI fails to assert a legitimate fear of exposure to

double or multiple liability necessary to file an interpleader claim.

Grounds for filing an interpleader claim are that defendant is exposed to double or multiple

liability. Fed. R. Civ. P. 22. In its motion and its proposed counterclaim and cross-claim for

interpleader, GFSI does not assert any fear of multiple liability as a basis for impleading the funds. It

merely asserts that it needs "protection from the court so that it does not pay the incorrect party." It

does not offer any *evidence* that BCIE—or other party—has made an unequivocal claim to the funds

GFSI owes to Partex under the contract. Indeed, the adverse nature of BCIE's claim is far from

clear. If BCIE has a claim to the funds, that claim is against Partex, not GFSI. Although GFSI

asserts, in briefing, that BCIE made a claim to GFSI for the money, citing an Order of Attachment

that was issued by a court in El Salvador, GFSI has apparently been unable to confirm this and has been unsuccessful at receiving any instruction from BCIE regarding payment.  (*See* Doc. 47-1 at 2.) And the document referenced by both BCIE and GFSI (Doc. 56-1, 47-2) as the Order of Attachment is wholly deficient.  As noted previously, no party has sought to register or enforce any foreign judgments in this action.  This unverified, unsworn, uncertified document does not provide any basis, let alone a sufficient basis, for concluding that GFSI has any real, reasonable fear of double liability. (Doc. 47-2, 56-1.)

Practical considerations also support this conclusion.  The court has determined that Partex is entitled to judgment.  Should GFSI be permitted to file a counter- and crossclaim for interpleader, add BCIE, and deposit the funds with this court, the only factual issues that would remain would include such questions as whether any receivers are, or have been, lawfully appointed under Salvadoran law and what claims they may have to Partex's award.  In other words, the court would be left in the untenable situation of resolving the existence of Salvadoran litigation and/or receivership; the lawfulness or validity of any such litigation or any orders entered therein; and the priority of BCIE's interests in the funds as opposed to other potential unknown creditors of Partex. This defies notions of comity and common sense.

For all the foregoing reasons, the court will vacate the order granting GFSI's motion to amend and add a party (Doc. 47) and BCIE's motion to intervene.  This ruling, combined with the court's determination that Partex is entitled to summary judgment, has the practical effect of mooting all the motions currently pending in the case and closing the case.

**IT IS THEREFORE ORDERED** that Partex's Motion for Summary Judgment (Doc. 13) is granted.

**IT IS FURTHER ORDERED** that Partex's Motion to Strike (Doc. 22) is denied.

**IT IS FURTHER ORDERED** that the Motion to Stay (Doc. 41) is denied as moot.

**IT IS FURTHER ORDERED** that the Order (Doc. 69) dated June 21, 2011, granting GFSI's Motion to File Counterclaim for Interpleader and to Add New Party (Doc. 47) and granting BCIE's Motion to Intervene (Doc. 55) is vacated in part as set forth above.

**IT IS FURTHER ORDERED** that GFSI's Motion to File Counterclaim for Interpleader and to Add New Party (Doc. 47) is denied.

**IT IS FURTHER ORDERED** that BCIE's Motion to Intervene (Doc. 55) is denied.

**IT IS FURTHER ORDERED** that Partex is entitled to judgment in the amount of $1,013,829.87 against GFSI, and is also entitled to an award of prejudgment interest on this sum at a rate of ten percent per annum from July 26, 2010, to April 14, 2011.

Dated this 28th day of March 2012, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**